JOSEPH GERFERS ET AL. v. RICHARD MECKE, EXECUTOR, ET AL.

Decided February 19, 1902.

**1.—Limitations—Conversion—Community Personalty—Diligence.**

Where heirs sue for a conversion by their stepfather of their deceased father's interest in community personalty, the statute of two years is applicable, and runs from the time when, by the use of reasonable diligence, their rights in the property should have been discovered.

**2.—Same.**

Evidence considered and held to show that heirs were chargeable with notice of their interest in community personalty of the father more than two years before action brought by them.

**3.—Same—Evidence.**

Where heirs sue to recover for their deceased father's interest in community personalty, a decree partitioning community lands in an action to which they were parties was admissible on the issue as to whether they had notice of the existence of such personalty, since it showed that their attention was thereby called to the existence of a community estate.

**4.—Same—Inventory—Charge.**

A charge that the filing of an inventory of the community property by plaintiffs' mother as survivor in community was not notice to plaintiff of their rights therein was properly refused, as it might have led the jury to believe that even if plaintiffs knew of the inventory it would not be notice.

Appeal from Bexar. Tried below before Hon. S. J. Brooks.

*James Raley,* for appellants.

*Shook & Vander Hoeven* and *Webb & Finley,* for appellees.

JAMES, CHIEF JUSTICE.—Joseph Gerfers and Augusta, his wife, had a community estate consisting of lands, sheep, and other personalty. The appellants Helen Igo and Anna Bacon are their two oldest children. Joseph Gerfers, the father, died in Kendall County in May, 1878. Au-

gusta gave community bond as survivor and filed inventory of the estate in Kendall County in September, 1878.

The petition of Helen Igo and Anna Bacon, joined by their husbands, alleged in one count that their father died May 25, 1878, leaving as community property 1600 head of sheep worth $8000, and certain other personalty increasing the value to $9300; that Augusta administered on the community estate, one-half of which belonged to her and the other half to their four children; that on April 20, 1880, William P. Gerfers married the widow and came into possession of the property and the increase thereof, then of the value of $11,300, one-fourth of which belonged to plaintiffs; that William P. Gerfers took possession of same, mixed them with his own property and used them as such, keeping no account thereof, knowing that one-half thereof belonged to the children of Joseph Gerfers; that thereby he became a trustee for them for their share and its increase, and plaintiffs elect to take the value of their share with interest; that plaintiffs did not know of their right in their father's estate until after William P. Gerfer's death in 1899, and up to that time their interests were concealed from them by their parents; that their mother died in 1890; that William P. Gerfers died in 1899, leaving an estate of which defendant Mecke is independent executor, and they pray for judgment for $2825 and interest thereon, in all $6374.

In another count they alleged the same community estate; the death of Joseph Gerfers; the qualification of Augusta as community executrix as aforesaid, her sureties being William P. Gerfers and C. H. Sultenfuss; the marriage of Augusta and said William P. Gerfers in April, 1880, at which time William P. Gerfers took possession of all said personal property and increase of the sheep; the death of Augusta in 1890, when the property fell into the hands of William P. Gerfers, who kept it and used it as his own; that there was due plaintiffs from said Augusta when she married William P. Gerfers and when she ceased to be the community administratrix the sum of $2950, being one-fourth of the value of the personal property left by Joseph Gerfers, one-fourth of the wool clip, and one-fourth of the value of the lambs sold, and she prayed for judgment against defendants for the amount of the bond $5830.

Among the defenses defendants pleaded limitations.

We conclude from the testimony in the case, in view of the verdict in favor of defendant, that plaintiff had notice, or by the exercise of reasonable diligence would have known of their claim more than two years prior to the commencement of the action. Not only does the undisputed evidence show that William P. Gerfers after the death of Augusta used and treated the property in question as his own, but this was plaintiff's allegation.

There was no material issue in this case except one of fact, viz., whether or not plaintiffs were chargeable with notice of their right to an interest in the community personalty, more than two years prior to this action. That issue was correctly submitted to the jury and found against plaintiffs.

The only matters alleged by appellants in their brief which would, if well founded, reverse the judgment, are found in the second, third, fourth, sixth, seventh, and eighth relative to charges and admission of testimony. These we will briefly notice.

The second, third, and fourth are based upon the proposition that there was no testimony of notice, and that the uncontroverted evidence was that they had no notice. It is true that the four children testified that they had no knowledge of the fact that their father had left any personal property until about the time William P. Gerfers died, in 1899, and there is no one who testified that they did. But the following facts were in evidence: 1. The proceedings of record in Kendall County in 1878 wherein Augusta qualified as survivor, and her inventory, which included the sheep, etc. 2. The proceedings in the District Court of Kendall County brought by Augusta and William P. Gerfers in 1883 against the children, then minors, in the District Court of Kendall County, wherein the community lands were partitioned. 3. George Igo, husband of one of the plaintiffs, testified that shortly after his marriage in 1896 he learned from W. P. Gerfers that his wife had an interest in the lands in Kendall County. Mrs. Bacon appears to have known a long time "that we children had the old home place." Mrs. Igo testified that she knew at the time of her mother's death that she had these lands from her father. So also the son Joseph testified that he knew years ago that they had lands in Kendall County and talked about the matter with his sisters. The other sister testified that she knew that they had lands in Kendall County which were set apart in the partition of the estate of her father and mother, that she had had conversations with her sisters about property and rights in the estate of their father and mother, and she couldn't say that she had had these conversations for the last ten years, although it may have been that long. The evidence thus amply shows that all the children knew of said partition suit and of lands that belonged to their parents, and that their parent's home place was in Kendall County; but they were unanimous in saying that they did not know anything of there having been sheep, nor did they ever know or had ever inquired what occupation their father had pursued. He and William P. Gerfers were both sheep raisers. The children who were brought up by William P. Gerfers at his home were under no undue restraint as to visiting neighbors and relatives, and there were no obstacles to their acquiring information. Mrs. Bacon was at the time of this trial 29 years of age, and had married in 1896. Mrs. Igo was 27 years of age, and married in 1895. Mrs. Cobllanz was 25 years old, and married in 1896. Joseph was over 23 years of age. Edmund Bacon, the husband of Anna, testified that he had visited Boerne (the county seat of Kendall County) twice in 1897, also in 1898, and was not prepared to say that he did or did not make inquiries after he learned of his wife's interest in the Kendall County lands in 1897, as his memory was faulty as to that, although he stated positively that he first learned

of his wife's interest in the property shortly before William P. Gerfers' death.

We conclude that from these facts and circumstances the jury were warranted in coming to the conclusion that plaintiffs knew, or in exercising reasonable care must have known, of their right in this personalty, more than two years prior to the suit.

The sixth assignment is that the court erred in admitting the decree of partition, the proposition being that it did not tend to prove any issue in the case and was confusing to the jury and incompetent. It is true, as appellant says, the decree only affected the lands. But it was a fact which called attention to the existence of a community estate, and it was a question of fact whether or not it would have put a reasonable person on inquiry as to the condition and extent of such estate. It was admissible on the issue of notice. Besides, its admission could not be material error, as the fact of such a partition was shown by the testimony of Mrs. Bacon and other testimony.

We regard the seventh assignment as not well taken. There was nothing about the partition decree (which dealt with lands only) which was calculated to lead the jury to believe that the partition included the personal property sued for. No such idea could in any event have been entertained by the jury from the decree itself, especially when they were instructed to find for plaintiff the value of the personalty, if they found in their favor on the issue of notice.

The eighth assignment is that the court should not have refused this charge: "The court instructs the jury that the filing of the inventory of the personal property was not notice to plaintiffs of their rights." If this charge had been given in the terms requested, it might have led the jury to believe that even if plaintiffs knew of the inventory, it would not constitute notice.

The statement of facts not having been agreed to by defendant Sultenfuss, a motion on his behalf has been made and sustained to not consider same so far as he is concerned. Sultenfuss was only a surety on the bond of Augusta Gerfers, and he sustained no other relation to plaintiffs, and if we should apply the statement of facts to him, his plea of limitations was clearly sustained and the court correctly charged the jury to find in his favor.

As to William P. Gerfers, we have not thought it necessary to discuss his status as occupying a trust relation, but we may assume that he was charged with such relation when his wife died by virtue of the manner in which he came into possession. The uncontradicted testimony is that after his wife's death he dealt with the property as his own, and, it is also alleged by plaintiffs. His acts were unequivocal acts of exclusive ownership. There could have been no possible right on plaintiff's part to recover of him under these conditions, unless it be that they, under all the circumstances, had not learned of their right to the property or could not in the exercise of reasonable diligence have known the same,

until within two years of filing their action. This issue was submitted and decided against them.

The court appears to have submitted the case upon the allegations of the first count of the petition. Appellants do not seem to have sought any submission upon the second count.

The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The principle governing this case is that the statute runs from the time of discovery of plaintiffs' right, or from such time as with reasonable diligence they might have discovered it. Kuhlman v. Baker, 50 Texas, 636. The case is not like cases arising under our statute concerning fraudulent conveyances (article 2544, Sayles' Revised Statutes), where notice to a vendee is essential. As an illustration of such cases see Railway v. Shirley, 89 Texas, 99.

Where a person has a right in property he is held, where the avenues of information are open to him, to reasonable diligence in the conduct of his affairs, and if by the use of such diligence he would have known of his right, he is held to have known it. Limitations will run against him from the time he should have made discovery by the exercise of reasonable diligence.

The matter of concealment was not submitted to the jury and appellant did not ask that it be charged upon.

Concerning the evidence, we think it could well have been found by the jury that plaintiffs by the exercise of such diligence could have known of their right more than two years before this suit was brought. It is judicially known that Bexar County (where they lived) and Kendall County adjoin. Plaintiff Helen Igo, seven years before the suit was brought, visited neighbors near the old home place in Kendall County. Plaintiff Anna Bacon did the same. The children, although they had reached mature years, say they never knew nor inquired what their father's occupation was. The jury with their common knowledge of affairs may well have discredited this testimony. If plaintiff knew that their father was a sheep raiser, when he died, any ordinary diligence would have lead them to the knowledge that he left sheep and the equipments of a sheep ranch.

The motion is overruled.

*Overruled.*

Writ of error refused.