# SUPREME COURT OF TEXAS.

## GALVESTON TERM, 1879.

---

ALSTON & HUTCHINGS v. JOHN D. H. RICHARDSON.

1. MONEY PAID UNDER MISTAKE.—Money paid under a mistake of fact may be recovered back, and that too, although the party may have had the means of knowing the facts.
2. FRAUD—LIMITATION.—Limitation in cases of fraud begins to run from the time when, by the use of reasonable diligence, it could have been discovered.
3. SAME.—See facts held sufficient to charge notice of fraud from date of the transaction.
4. PLEADING—STATUTE OF LIMITATION.—The defendant demurred generally, and by way of plea set up the statute of limitation. The action, by the petition, appeared to be barred by limitation. The court sustained the demurrer and plea: *Held*, To be error.
5. SAME.—The statute of limitations, where the facts in the petition show the action barred, may be pleaded by special demurrer setting up the statute.

ERROR from Madison. Tried below before the Hon. James R. Burnet.

Alston & Hutchings brought suit in the District Court of Madison county in 1873, to recover of Richardson $813 and interest, paid by them to defendant in May, 1870, through mistake, occasioned, as was alleged, by false and fraudulent representations of defendant. To the plaintiffs' original and amended petition the defendant demurred and pleaded the statute of limitations, which demurrer and plea were sustained by the court below and the cause dismissed. To this ruling of the court the plaintiffs excepted, and prosecuted a writ of error. They assigned as error the ruling of the court

( 1 )

below in sustaining defendant's demurrer and plea and in dismissing the cause.

The allegations in the petition are to the effect "that plaintiffs paid to defendant a certain sum of money by mistake, occasioned by false and fraudulent representations of defendant; that the plaintiffs were sureties on a claimant's bond for property attached by defendant, and as such liable to have a judgment rendered against them; that they lived in another county, a considerable distance from the county-seat of Madison county, with a river intervening; that they did not attend the courts of Madison county to give the matter their personal attention, or employ counsel to represent them, but, as is usual and customary, depended on their principal to attend to the matter; that when, afterwards, they were informed by defendant that the cause had been tried and he had recovered a judgment against them, they were prepared to believe the representations, because they thought they were liable to have such judgment rendered against them; that, having confidence in the integrity of defendant, as soon as a message was received from him the plaintiff Hutchings at once went to the defendant's house, not questioning the truth of the message, but to pay the supposed judgment; that defendant again represented it as a fact that he had recovered such judgment, and he and Hutchings went together to the district clerk's office to ascertain the exact amount of the judgment; that upon making inquiry of the clerk, he gave the amount of the judgment, which Hutchings understood to be the amount recovered by Richardson against him and his co-sureties, when in fact it was the amount of the judgment recovered by the said Richardson against one K. G. Martin. Under the above-stated circumstances it is alleged that the plaintiffs, Alston & Hutchings, by Hutchings, paid the defendant over $800." The allegations further show that the defendant had recovered no judgment in the District Court against the sureties on the claimant's bond, or against Alston & Hutchings, as he had represented to them; that he could

not legally have recovered such judgment; and, further, that the plaintiffs were not legally or morally bound to pay the defendant any sum of money whatever.   This money was paid in May, 1870, and it is alleged that the mistake was not discovered until December, 1871, when one of the plaintiffs procured the assistance of an attorney to examine the minutes of the District Court, with a view of obtaining the proper data, to institute a suit against the estate of one John H. Calhoun, who was a co-surety on the claimant's bond, and it was then discovered, for the first time, that they had, on the representations and demand of defendant, paid him a large sum of money which they were neither legally nor morally bound to pay.   This suit was brought within two years after such discovery.

*Abercrombie & Goree*, for plaintiff in error.

I. When money is paid by mistake under an ignorance or forgetfulness of facts, or under a misapprehension of the state of the contract by the party who pays it, if he be not legally nor morally obliged to pay, it may be recovered back.   Nor is it any defense to an action to recover such money, that the other party had means of knowledge.   (Story on Cont:, 422, 423; Emerson *v.* Navarro, 31 Tex., 337; Williams *v.* Warnell, 28 Tex., 610.)

II. But the main question in this case is, whether the plaintiffs' original and amended petitions contain such allegations as, if proven to be true, would prevent the operation of the statute of limitations?

The law is well settled, that in cases of fraud or mistake the statute begins to run from the time of the discovery of such fraud or mistake, and not before.   (Munson *v.* Hallowell, 26 Tex., 475, and authorities there cited; Emerson *v.* Navarro, 31 Tex., 334; Hudson *v.* Wheeler, 34 Tex., 356; 2 Story's Eq., 1521*a*.)

We contend that the plaintiffs' pleadings allege such facts and circumstances as would, if sustained, prevent the opera-

tion of the statute until the discovery of their cause of action by plaintiffs; and, further, that such facts and circumstances of imposition, misrepresentation, and concealment of defendant are alleged as amount to a fraudulent concealment of plaintiffs' cause of action by defendant.

III. It seems to us that even if there were no allegations of fraudulent concealment and misrepresentation on the part of defendant, and the plaintiffs' pleadings had only shown that an innocent mistake was made by both parties, then the plaintiffs are entitled to relief, and the defendant should not be allowed to defeat their recovery by a plea of limitation. The statute should not interpose as a bar until the discovery of the mistake. In the case of Emerson *v.* Navarro, 31 Tex., 334, where an innocent mistake had been committed, unmixed with any ingredient of fraud, it was held that the statute did not commence to run until the discovery of the mistake. In the decision therein rendered the following language is used: "It must be borne in mind that the right sought in this proceeding is an equitable right; it is no breach of contract; it arises from no default of duty in the party defendant. But it is based upon the equitable principle that the defendant has got by the rule something which he ought not conscientiously to retain; that he has got something for nothing, arising out of the mutual and innocent mistake of both parties; that the holding on to the price of two hundred and thirty-five acres of land, which the purchaser did not get by his purchase, is unconscientious, and therefore ought to be adjusted by the principles of equity, and not by the rules of law." If, then, the statute does not operate as a bar in a case of mistake, unmixed with a ingredient of fraud, until the discovery of such mistake, h much stronger the reason that it should not operate as a b. when the mistake has been occasioned by the fraudulent acts, misrepresentations, and concealments of the party seeking to interpose it.

As to whether defendant can avail himself of the plea that the plaintiffs could have informed themselves of the truth

or falsity of defendant's representations by using ordinary diligence, we contend that it is no defense to this action that the plaintiffs had the means of knowledge. ( Story on Cont., 422, 423; Williams *v.* Warnell, 28 Tex., 610; Emerson *v.* Navarro, 31 Tex., 337.)

As to the objection that there are no allegations of the fraudulent concealment by defendant of plaintiffs' cause of action, we reply, that although there are no such allegations in express terms, yet, as before said, the alleged acts and misrepresentations of defendant had that effect, and it is so averred. The question, then, presented by the pleadings may be briefly stated as follows: When a party, in negotiating with another, not only suppresses the truth in regard to a material matter, but actually, fraudulently, and falsely represents a fact to exist which does not exist, and thereby obtains an advantage, and by such false and fraudulent statements prevents the other party from discovering the truth, lulls suspicion, or, which is the same thing, conceals from the other party his cause of action, will the courts of the country permit such party to take advantage of his own fraud and wrong by pleading the statute of limitations, and thus to enjoy the fruits of his iniquitous proceeding as a reward and future encouragement to his prowess in such course of conduct? The facts alleged in the case show that defendant obtained an unconscientious advantage of plaintiffs, and by his fraudulent and false statements and representations prevented the discovery of their cause of action, which is tantamount to an allegation of fraudulent concealment. It is an allegation of fraudulent concealment, and we cannot conceive that such an allegation could be stronger made.

*Randolph & McKinney,* for appellee.—" The common law," says Chancellor Kent, vol. 2, p. 380, " affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indiffer-

ence to the ordinary and accessible means of information."
(1 Story's Eq., sec. 199.)

"The presumption is that if the party affected by any fraud-
ulent transaction or management might, with ordinary care
and attention, have seasonably detected it, he seasonably had
actual knowledge of it." (Ang. on Lim., 186.) "The fraud,
if any, (which was by conveyance of record,) was patent from
the beginning, and no question can arise as to the time of dis-
covery." ( Mercein *v.* Burton, 17 Tex., 209 ; Burke *v.* Smith,
16 Wall., (Sup. Ct.,) 401 ; Emerson *v.* Navarro, 31 Tex.,
335.)

BONNER, ASSOCIATE JUSTICE.—Although this case shows
upon the part of the plaintiffs a great degree of credulity and
unusual readiness, if not undue willingness, to voluntarily
pay a security debt without even first communicating with
their principal, yet, as between the parties to the suit, we
think the petition sets out a cause of action good on general
demurrer.

The general rule is that money paid under a mistake of
fact may be recovered back, and that, too, although the
party may have had the means of knowledge. (City Bank
*v.* National Bank, 45 Tex., 217.)

As regards the statute of limitations, the established rule in
this court is that, in cases of fraud, it will begin to run from
the time when, by the use of reasonable diligence, it could
have been discovered. (Kuhlman *v.* Baker, 50 Tex., 630.)

We think, under the circumstances as shown by the rec-
ord, that the alleged fraud could have been discovered by
the use of reasonable diligence at the time when perpetrated;
that the statute would begin to run from that date; and that
the action was barred when the suit was brought:

Under our statute, however, limitation cannot be made
available unless it be specially set forth as a defense. ( Pas-
chal's Dig., art. 4629.)

Although it was at one time doubted whether the statute

could be invoked unless by answer to the merits, yet it has been since repeatedly held, that when the pleadings show affirmatively that the demand is barred by limitation, it can be made available also by special demurrer. (Hudson v. Wheeler, 34 Tex., 356.)

In this case, the statute was not invoked by special demurrer, but by plea; yet the court below seems to have considered the question as on demurrer. That portion of the judgment is as follows: "And now come the parties and announce ready for trial, and, after argument of counsel on the pleadings, it is adjudged that the demurrer and plea of the statute of limitations of the defendant to plaintiffs' original and amended petitions be sustained, and that the cause be dismissed."

In thus treating limitation, under the pleadings, as a question of law, we think the court erred.

We regret to have to reverse this or any case upon a seeming technicality, yet it would be a dangerous precedent to permit a case to be dismissed by the court on the trial of the issues of law, however obvious may be the final determination on the merits, upon a question of law which can be made available by special demurrer only, when this is not interposed.

JUDGMENT REVERSED.